UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK BORDERUD,<br>    *Plaintiff*,<br><br>    v.<br><br>RIVERSIDE MOTORCARS, LLC, JOSEPH SALINARDI, & CHRISTIAN SALINARDI,<br>    *Defendants*. | No. 3:18-cv-1291 (VAB) |

**RULING ON MOTION TO DISMISS**

    Mark Borderud ("Plaintiff") has sued his former employer, Riverside Motorcars, LLC, ("Riverside"); Christian Salinardi, the alleged owner of Riverside; and Joseph Salinardi, the alleged General Manager of Riverside (collectively, "Defendants"), regarding commissions and expenses Defendants allegedly owe him. Compl. ¶¶ 3–7, 11–15, ECF No. 1 (Aug. 6, 2018). Mr. Borderud alleges claims under the Connecticut Wage Act, Conn. Gen. Stat. § 31-68, *et seq*. Compl. ¶ 1.

    Mr. Salinardi previously moved to dismiss Mr. Borderud's claims for lack of subject matter jurisdiction, claiming that Mr. Borderud failed to meet the $75,000 threshold required for maintaining an action in federal court based on diversity jurisdiction. Rule 12(b)(1) Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 11 (Aug. 29, 2018) ("First Mot. to Dismiss"). The Court denied this motion. Ruling on First Mot. to Dismiss, ECF No. 29 (Jan. 25, 2019).

    The Defendants have jointly moved to dismiss Mr. Borderud's claim for lack of subject matter jurisdiction again, this time claiming that Mr. Borderud did not meet the domicile requirements necessary to maintain a diversity action in federal court. Rule 12(b)(1) Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 40 (Feb. 14, 2020) ("Second Mot. to Dismiss").

    For the following reasons, the Court **DENIES** Defendants' motion to dismiss.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

For some period of time before April 28, 2016,[2] Mr. Borderud allegedly sold cars for Riverside in Naugatuck, Connecticut. Compl. ¶¶ 3, 11.

As of September 2009, Mr. Borderud had his domicile in Connecticut. Exhibit 1 to Pl.'s Opp'n to Mot. to Dismiss (Pl.'s Resp. to First Set of Interrogs.), ECF No. 41-1 at 5 (Mar. 6, 2020) ("Pl.'s Ex. 1"). Mr. Borderud lived in Stratford, Connecticut until May 16, 2017. *Id.* From May 16, 2017 through September 2017, Mr. Borderud traveled throughout the southeastern and southern United States. Exhibit 2 to Pl.'s Opp'n to Mot. to Dismiss (Borderud Dep.) at 11, ECF No. 41-2 (Mar. 6, 2020) ("Pl.'s Ex. 2"). He asserts that he did not leave the United States during that period. *Id.*

From September 2017 to the present, Mr. Borderud has resided in Mexico. Pl.'s Ex. 1 at 5 (Pl.'s Resp. to First Set of Interrogs.); Pl.'s Ex. 2 at 12 (Borderud Dep.). He resided in San Miguel de Allende, Mexico from September 2017 to February 2018, and in Todos Santos, Mexico from February 29, 2018 to the present. Exhibits to Defs.' Mem. in Support of Mot. to Dismiss at 18 (Borderud Dep.), ECF No. 40-2 (Feb. 14, 2020) ("Defs.' Exs."). His address has been Todos Santos, Mexico since February 29, 2018. Defs.' Exs. at 16 (Borderud Dep.).

He holds a temporary residence card from Mexico. Pl.'s Ex. 2 at 4, 15 (Borderud Dep.). In his deposition testimony, he admits living in Mexico at the time he filed his Complaint on

---

[1] Factual allegations relevant to Mr. Borderud's domicile are drawn from the Complaint as well as from additional evidence submitted by the parties, to the extent that they are undisputed. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings. (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

[2] The Complaint does not specify when Mr. Borderud worked for Riverside. It merely states that Mr. Borderud filed his lost wage claim on April 28, 2016. Compl. ¶ 17. The Court therefore presumes that Mr. Borderud worked at Riverside for some period of time prior to April 28, 2016.

August 6, 2018. Defs.' Exs. at 23–24 (Borderud Dep.). He also owns a car that he keeps in Baja, Mexico, *id.* at 9, but he does not drive it because it is not registered, Pl.'s Ex. 2 at 9–10 (Borderud Dep.).

Mr. Borderud has two daughters who live in New York City, and he stays with one of them or the other when he visits the United States. Defs.' Exs. at 13–14 (Borderud Dep.).

### B. Procedural Background

On August 6, 2018, Plaintiff filed his Complaint. Compl. He asserts state law claims against Riverside Motorcars, LLC, Christian Salinardi, and Joseph Salinardi for breach of contract and failure to pay wages under the Connecticut Wage Act. *Id*. ¶ 1. He alleges that he was "an individual residing in New York, New York and [was] a citizen of New York" at the time he filed his Complaint. *Id.* ¶ 2. He alleges that Defendants either have a principal place of business in or are citizens of Connecticut. *Id.* ¶¶ 3, 5, 7.

On August 29, 2018, Mr. Salinardi, *pro se*, filed a motion to dismiss for lack of subject matter jurisdiction based on Mr. Borderud's alleged failure to meet the $75,000 threshold required for maintaining a diversity action in federal court. First Mot. to Dismiss.

On January 25, 2019, the Court denied Mr. Salinardi's motion to dismiss. Order, ECF No. 29 (Jan. 25, 2019).

On February 14, 2020, Defendants jointly moved to dismiss the Complaint for lack of subject matter jurisdiction, alleging that Mr. Borderud has failed to meet the domicile requirements necessary for maintaining a diversity action in federal court. Second Mot. to Dismiss. The Defendants included exhibits with the memorandum of law. Mem. of Law in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 40-1 (Feb. 14, 2020) ("Defs.' Mem."); Defs.' Exs. Defendants' exhibits contain excerpts from Mr. Borderud's August

13, 2019 deposition, Defs.' Exs. at 1–4, 8–16, 20–31 (Borderud Dep.); online posts purportedly from Mr. Borderud's Instagram account, Defs.' Exs. at 5–7 (Instagram Posts); the notarized certification page from his responses to interrogatories, Defs.' Exs. at 17–19 (Pl.'s Certification of Interrog. Answers); an alleged printout from a website belonging to Mr. Borderud, Defs.' Exs. at 32–33 (Website: Mark Borderud: Transform Your View); and the ruling *Greenblatt v. Gluck*, No. 03 CIV.597 RWS, 2003 WL 1344953 (S.D.N.Y. Mar. 19, 2003), Defs.' Exs. at 35–40.

On March 6, 2020, Mr. Borderud filed a brief in opposition to Defendants' motion to dismiss. Opp'n to Mot. to Dismiss, ECF No. 41 ("Pl.'s Opp'n) (Mar. 6, 2020). He included two exhibits consisting of his answers and responses to Defendants' interrogatories and requests for production and excerpts from his August 13, 2019, deposition transcript. Pl.'s Ex. 1 (Pl.'s Resp. to First Set of Interrogs.); Pl.'s Ex. 2 (Borderud Dep.).

On March 16, 2020, Defendants replied to Mr. Borderud's opposition to the motion to dismiss. Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 42 (Mar. 16, 2020) ("Defs.' Reply").

## II.     STANDARD OF REVIEW

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "Congress has granted district courts original jurisdiction over . . . certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). The burden of persuasion for establishing diversity jurisdiction rests on the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *see also Herrick Co. Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (the party asserting diversity jurisdiction "bears the burden of demonstrating that the grounds for diversity exists and that diversity is complete."). The party invoking the court's jurisdiction must support allegations

of complete diversity with "competent proof." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court also may resolve disputed jurisdictional fact issues, however, "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### III.   DISCUSSION

Subject matter jurisdiction based on diversity of citizenship exists where the civil action is (1) between "citizens of different States," or (2) between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)–(2). In other words, "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 473 U.S. 365, 373 (1978) (emphasis in original); *see also Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (diversity jurisdiction is available only when all adverse parties have completely diverse citizenship).

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (emphasis in original). In contrast, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019); *Herrick Co., Inc. v. SCS Comm., Inc.*, 251 F.3d 315, 322 (2d. Cir. 2001); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). A United States citizen domiciled abroad therefore is considered "stateless" for purposes of § 1332(a), *Newman-Green*, 490 U.S. at 828, and, thus, "a suit by or against a United States citizen domiciled abroad may not be premised on diversity," *Force*, 934 F.3d at 74. Although Congress's "rationale for not granting United States citizens domiciled abroad rights parallel to those it accords to foreign nationals" is not clear, "the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." *Cresswell*, 922 F.2d at 68.

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk,* 935 F.3d at 53 (internal quotation marks omitted). "For purposes of diversity jurisdiction, the relevant domicile is the parties' domicile at the time the complaint was filed." *Id.*; *see also Wright v. Musanti*, 887 F.3d 577, 584 (2d Cir. 2018) (diversity of citizenship is determined at time action is commenced in cases where diversity is sole basis for court's jurisdiction); *Linardos*, 157 F.3d at 947 (federal court does not have jurisdiction if diversity did not exist at time action was filed).

Residency refers to a person living in a particular place at a given time but, unlike domicile, does not require an intent to remain or return. *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004). "A party may have multiple residences, but only one domicile." *Connolly v. Spielman*, 999 F. Supp. 270, 272 (N.D.N.Y. 1998). Residency alone is insufficient to establish domicile. *Van Buskirk*, 935 F.3d at 54; *see also Ming Li v. Colonial BT, LLC*, No. 3:14-cv-999 (CSH), 2014 WL 3579469, at *5 (D. Conn. July 21, 2014) ("Citizenship, which is generally synonymous with domicile, may not be inferred from residency.").

The Supreme Court has articulated a two-part test for determining a party's domicile. *Texas v. Florida*, 306 U.S. 398 (1939). "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." *Id.* at 424; *see also Van Buskirk*, 935 F.3d at 53 ("Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." (internal quotation marks omitted)); *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) (domicile generally requires physical presence in a state with intention to remain there indefinitely).

A person has only one domicile at any given time. *Van Buskirk*, 935 F.3d at 53. "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Id.* at 53; *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). "To effect a change in domicile, two elements are required: (1) residence in a new domicile; and (2) the intention to remain there indefinitely." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455–56 (W.D.N.Y. 2011) (citing *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). A party alleging that there has been a change in domicile bears the burden of proving the required

7

intent to change from one domicile to another coupled with residence in a new State and must prove those facts by clear and convincing evidence. *Palazzo*, 232 F.3d at 42.

Defendants argue that the Court lacks subject matter jurisdiction because, when the Complaint was filed, Mr. Borderud was a United States citizen domiciled in Mexico and therefore was a "stateless" person that destroyed diversity jurisdiction. Defs.' Mem. at 2. In the alternative, Defendants argue in their Reply that Mr. Borderud was domiciled in Connecticut and the Court thus lacked diversity jurisdiction because the Defendants were also domiciled in Connecticut at that time. Defs.' Reply at 1.

Mr. Borderud argues that the Court has jurisdiction because he was domiciled in New York at the time this action was filed while the Defendants were domiciled in Connecticut. Compl. ¶¶ 2, 3, 5, 7 (stating Plaintiff resides in and is a citizen of New York and Defendants are citizens of Connecticut); Pl.'s Opp'n at 1.

The parties do not dispute that Mr. Borderud resided in Mexico at the time he filed his Complaint. Defs.' Mem. at 3; Pl.'s Opp'n at 1. Mr. Borderud, however, argues that he was domiciled in New York because he never intended to make Mexico his permanent home even though he had resided there for nearly one year before he filed his Complaint. Pl.'s Opp'n at 1; Pl.'s Ex. 1 at 5 (Pl.'s Resp. to First Set of Interrogs.).[3]

It is clear that, as of September 2009, Mr. Borderud was domiciled in Connecticut. Pl.'s Ex. 1 at 5 (Pl.'s Resp. to First Set of Interrogs.). The evidence before the Court suggests three

---

[3] Both parties present evidence concerning events that occurred both before and after Mr. Borderud filed his Complaint. Because diversity is determined at the time the Complaint is filed, *Van Buskirk,* 935 F.3d at 53, the Court will disregard evidence concerning events after Mr. Borderud filed his Complaint. The parties have presented enough evidence concerning Mr. Borderud's domicile at the time he filed his Complaint for the Court to decide whether diversity existed. *Cf. Linardos*, 157 F.3d at 948 (remanding to district court for a factual exploration of plaintiff's domicile at time complaint was filed because defendant's motion to dismiss focused solely on plaintiff's domicile at time *motion* was filed and therefore parties did not present evidence of plaintiff's domicile at proper point in time).

8

possible domiciles for Mr. Borderud at the time he filed his Complaint: Connecticut, New York, or Mexico. The issue before the Court, therefore, is whether Mr. Borderud changed his domicile from Connecticut to New York or to Mexico before he filed his Complaint. The Court will only have subject matter jurisdiction if Mr. Borderud was domiciled in New York at the time he filed his Complaint.

The Court will first address whether Mr. Borderud established domicile in New York at some point before he filed his Complaint.

Defendants argue that Mr. Borderud's domicile remained in Connecticut because, despite his extensive traveling and subsequent residence in New York, he possessed intent to return to Connecticut. Defs.' Reply at 1–2. Mr. Borderud, as the party invoking the Court's jurisdiction, bears the burden of proving by competent proof that he was domiciled in a State other than Connecticut at the time he filed his Complaint to show that complete diversity existed. *See Linardos*, 157 F.3d at 947.

When the evidence indicates that the party whose domicile is in question has more than one residence or the residence is unclear, the court should focus on the intent of the parties. *Hicks v. Brophy*, 839 F. Supp. 948, 950 (D. Conn. 1993). "To ascertain intent, a court must examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent." *Id.* at 950–51. Thus, a court must look to the totality of the evidence, or the party's entire course of conduct, to determine a party's domicile. *Id.* at 951. "The party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *Id.*; *see also District of Colombia v. Murphy*, 314 U.S. 441, 456 (1941); *Texas*, 306 U.S. at 425.

Relevant factors considered in determining the intent to be domiciled in a particular state include "the place where civil and political rights are exercised, taxes paid, real and personal property (such as automobiles) located, driver's and other licenses obtained, bank accounts maintained, and places of business or employment." *Hicks*, 839 F. Supp. at 951. "Other factors are also relevant, such as whether the person owns or rents his place of residence, how permanent the residence appears, and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Id*. No single factor, however, is determinative. *Id.* For example, evidence of registration to vote or a history of voting practices in a particular state may not, by itself, establish domicile without evidence indicating a continuous physical presence and intent to remain in that state. *Boston Safe Deposit and Tr. Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991) (holding that defendant's declaration that he was registered to vote and paid taxes in Colorado did not by itself establish his domicile there when his affidavit failed to show an established voting history in that state and he received mail at a New York address at time he filed his complaint).

Mr. Borderud resided in Stratford, Connecticut for nearly eight years from September 2009 to May 2017. Pl.'s Ex. 1 at 5 (Pl.'s Answers to Interrogs.). In May 2017, he left Connecticut after deciding to travel the southeastern and southern United States. *Id.* at 5; Pl.'s Ex. 2 at 11 (Borderud Dep.). In between traveling, he would return to New York where his two daughters, Wilhelmina and Sarah, live. Pl.'s Ex. 2 at 14 (Borderud Dep.).

Mr. Borderud maintained certain contacts with Connecticut throughout the period of time he was traveling and living in New York. In his deposition, he testified to receiving Social Security payments by direct deposit from his bank, the Sikorsky Financial Credit Union in Stratford, Connecticut, Pl.'s Ex. 2 at 8–9 (Borderud Dep.); he has a valid Connecticut driver's

10

license listing an address in Stratford, *id.* at 4, 7; and he cast a ballot in Stratford, Connecticut during the 2016 presidential election, Defs.' Exs. at 28 (Borderud Dep.).

These contacts do not, however, require the conclusion that Mr. Borderud remained domiciled in Connecticut if these contacts contradict with and are outweighed by his contacts with New York at that time. *See Hicks*, 839 F. Supp. at 951 ("The party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent.")

Mr. Borderud has not lived in Connecticut since leaving in 2017 to travel and live with his daughter in New York. He did not vote in Connecticut or anywhere else in the 2018 mid-term election. Defs.' Exs. at 28. Both of his daughters live in New York, Pl.'s Ex. 2 at 14 (Borderud Dep.); he has a room in one of his daughter's apartment, which he considers his official residence, *id.* at 4–5; he spent twenty to thirty nights there over the last few years, *id.* at 5; and, he receives mail from his bank, phone, and insurance companies at her address, *id.* at 7, 13.

These factors indicate that Mr. Borderud has maintained a physical presence in New York, not Connecticut, after May 2017. *See Linardos*, 157 F.3d at 948 (a person's domicile changes from one state to another when he possesses an intent to move there and physically does so). They also sufficiently indicate that he possessed an intent to remain in New York indefinitely, especially because he would return there whenever he was not traveling. *See Linardos*, 157 F.3d at 948 (defendant's domicile would not have changed from Florida to Connecticut based on an "unimplemented intent" to move there without actual physical presence in Connecticut).[4]

---

[4] Ordinarily, Mr. Borderud's tax returns, and the state where they were filed, would be helpful. *See Hicks*, 839 F. Supp. at 951 (listing where taxes are paid as being one of the factors to be considered in determine a person's domicile). In this case, however, the most recent returns available at the time of this lawsuit would not necessarily be outcome determinative. Mr. Borderud already has admitted living in Connecticut well into 2017. As a result, the

Accordingly, this Court concludes, based on a totality of the evidence, that Mr. Borderud's domicile changed from Connecticut to New York before he filed his Complaint.

Defendants argue that, if Mr. Borderud is not domiciled in Connecticut, that he is domiciled in Mexico, thereby defeating subject matter jurisdiction due to the presence of a "stateless" party. Defs.' Mem. at 2; Def.'s Reply at 1.

The Court disagrees.

Although there is evidence indicating that Mr. Borderud had two residences, one in New York and one in Mexico, objective indicia suggest that he intended to remain in New York indefinitely at the time this action was filed despite the fact that he did not reside there on a continuous basis. In order for the Court to find for Defendants, they must prove by clear and convincing evidence, *Palazzo*, 232 F.3d at 42, their allegation that Mr. Borderud changed his domicile to Mexico at some point after he left Connecticut, but before he filed his Complaint, Defs.' Mem. at 2.

In September 2017, Mr. Borderud moved to San Miguel de Allende, Mexico. Pl.'s Ex. 1 at 5 (Pl.'s Resp. to First Set of Interrogs.). He resided there until February 2018, at which time he moved to Todos Santos, Mexico. *Id.* He filed his Complaint about five months later on August 6, 2018. Compl. He testified that he had a temporary Mexican visa but believed it would expire in September 2019. Pl.'s Ex. 2 at 15 (Borderud Dep.).

Defendants argue that Mr. Borderud made online statements indicating his intent to remain in Mexico indefinitely. On his photography website, Mr. Borderud stated: "[W]anna

---

tax returns most probative of this inquiry—at the time of the filing of this Complaint—the 2018 tax returns, would not be due until 2019, at the earliest. *See* 26 U.S.C. § 6072(a) (income tax "returns made on the basis of the calendar year shall be filed on or before the 15th day of April following the close of the calendar year"). And although any tax return might reflect residency in the State of New York, the tax return also likely would reflect residency in Connecticut, given the date of Mr. Borderud's departure from that state.

12

know what I'm doing next? Selling everything and moving to a little surfing/fishing village in Mexico." Defs.' Exs. at 32 (Website: Mark Borderud: Transform Your View). On August 2, 2017, Mr. Borderud posted a photo to his public Instagram account with the caption "Home sweet home, San Miguel de Allende, Mexico. . . . The lifestyle here is in startling contrast with my last stop in life, the Northeast of America. Never say never but I'll never live in the States again." Defs.' Exs. at 5 (Instagram Post). Nine days before Mr. Borderud filed his Complaint, he posted on his public Instagram account, "I love Mexico." Defs.' Exs. at 7 (Instagram Post).

Mr. Borderud resided in Mexico for nearly one year before filing this action, but his possession of a temporary visa does not indicate that Mexico was his permanent residence. A person who is a United States citizen living in a foreign country may maintain a domicile in the United States as long as he or she continues to have a home in a particular state and an intent to return there. *See Universal Reinsurance Co.*, 224 F.3d at 141 ("Of course, a person may still be domiciled in a state even if a non-resident, so long as he or she has his home there and intends to return. . . . [but] failure to allege [that a plaintiff residing in Bermuda had] citizenship in a particular state is fatal to diversity jurisdiction."). Possession of a temporary visa while residing in a foreign country does not necessarily indicate a domicile in that country because the temporary nature of the visa does not equate to permanent residence. *See Engels v. Exel Glob. Logistics, Inc.*, No. C 04-3944 MHP, 2005 WL 850879, at *5 (N.D. Cal. Apr. 11, 2005) (plaintiff who resided and worked in Brazil with a temporary visa was nonetheless domiciled in California because he maintained a house there and traveled in the U.S. extensively for business); *cf. Ming Li v. Colonial BT, LLC*, 3:14-cv-999 (CSH), 2014 WL 3579469, at *5 (D. Conn. July 21, 2014) (in the context of determining the citizenship of an immigrant to the United States for purposes of diversity jurisdiction, "an alien who has been accorded lawful permanent residence from the

United States (i.e., has obtained a 'green card') is considered a citizen of the state in which he is domiciled. In contrast, one who is admitted into the United States on a temporary, non-immigrant visa (e.g., as a temporary visitor for business or pleasure) is an alien for purposes of citizenship" (internal citations omitted)).

Thus, Mr. Borderud's residence in Mexico for under a year before filing his Complaint and his possession of a temporary visa do not require the conclusion that he was domiciled in Mexico.

Moreover, Mr. Borderud's online statements allegedly expressing a subjective intent to remain in Mexico indefinitely, while relevant to his intent, are not determinative of his domicile when weighed against the objective indicia of his temporary visa. "[A] party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *Hicks*, 839 F. Supp. at 951. "Although intent is crucial to one's domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home . . . cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent." *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991); *Ming Li*, 2014 WL 3579469 at *4; *Hicks*, 839 F. Supp. at 951. Thus, Mr. Borderud's online statements do not establish his domicile in Mexico because those statements conflict with his possession of a temporary Mexican visa, which objectively demonstrates that his residence in Mexico was temporary.

Accordingly, Defendants have failed to prove by clear and convincing evidence that Mr. Borderud changed his domicile to Mexico before he filed his Complaint.

Because this Court finds that Mr. Borderud was not domiciled in Mexico at the time he filed his Complaint, he cannot be a "stateless" person that destroys diversity jurisdiction. *See*

*Newman-Green*, 490 U.S. at 828 (United States citizen domiciled in a foreign country destroys diversity jurisdiction). Mr. Borderud's only other possible domicile is in New York, which means that he was a United States citizen domiciled in a State and, therefore, does not meet the definition of a "stateless" person under *Newman-Green*. *See id.* Accordingly, the Defendants' argument that Mr. Borderud's "stateless" status destroys diversity jurisdiction fails. *See* Defs.' Mem. at 2 (asserting that Mr. Borderud was a stateless person when he filed this action and, as such, *Newman-Green* dictates that the Court should dismiss this action).

Thus, because Mr. Borderud has provided competent proof of New York being his domicile when he filed his Complaint, while Defendants were domiciled in Connecticut diversity jurisdiction exists.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[5] Even if Mr. Borderud's domicile changed to Mexico at some point during the pendency of this action—if, for example, his temporary visa became a permanent one—it would not destroy this Court's subject matter jurisdiction. The Supreme Court has consistently held that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824); *Clarke v. Mathewson*, 37 U.S. 164, 167 (1838); *Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas*, 260 U.S. 48, 54 (1922); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *Linardos*, 157 F.3d at 947. Thus, any change in Mr. Borderud's domicile after commencement of this action would not destroy this Court's subject matter jurisdiction because diversity was complete at the time he filed his Complaint.